JOHN W. CARLSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF LEROY REYNOLDS, DECEASED, APPELLANT, V. JOHN P. METZ III, DOING BUSINESS AS METZ ENGINEERING, AND INDIVIDUALLY, ET AL., APPELLEES.

532 N.W.2d 631

Filed June 2, 1995. No. S-93-704.

Paul R. Elofson, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellant.

David M. Woodke and Susan E. Norris, of Gross & Welch, P.C., for appellee John P. Metz III.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, and CONNOLLY, JJ., and CORRIGAN, D.J.

WHITE, C.J.

John W. Carlson, personal representative of the estate of Leroy Reynolds, brought a wrongful death action against John P. Metz III, doing business as Metz Engineering; Electrical, Inc., a Nebraska corporation; and Diversified Technical Services, Inc. (DTS), an Iowa corporation.

Reynolds, an electrician and employee of Electrical, Inc., died as the result of an accident which occurred on October 27, 1989, while Reynolds was working in a trench on a construction site. Metz directed his employee Phillip Tague to trench an area with a trenching machine near where Reynolds was working. Reynolds was caught in the auger-crumber attachment of the trencher and suffered severe injuries which ultimately led to his death.

Tague was employed by DTS, which sometimes used the trade name "Metz Engineering." John P. Metz III owned and operated Metz Engineering as a sole proprietorship, first in Nebraska and then in Iowa. On January 1, 1989, Metz transferred all assets, including the trade name "Metz Engineering," to DTS. Metz is the director, secretary, and employee of DTS.

This appeal concerns the personal liability of Metz. Carlson seeks to hold Metz personally liable for Reynolds' death under common-law theories of agency and under the theory that Metz was acting as an agent for an undisclosed principal because Metz failed to register the trade name "Metz Engineering" after incorporating the business. Carlson also seeks to hold Metz liable as corporate officer of DTS for his negligent hiring, training, and supervising of his employee Tague, the operator of the trenching machine.

The district court sustained Metz' demurrer to Carlson's

amended petition, finding that Carlson failed to plead facts sufficient to support a claim that Metz was personally liable for the death of Reynolds. The court gave Carlson 10 days to file a second amended petition. On the 10th day, Carlson filed a motion for reconsideration which he later withdrew. While the court was taking that motion under advisement, and a month after the court sustained Metz' demurrer, Carlson filed a motion for leave to file a second amended petition instanter. The court denied the motion, not because the motion may not have been timely, but because the new allegations in Carlson's second amended petition did not correct the defects fatal to the amended petition. The case remains pending as to Electrical, Inc., and DTS.

Carlson alleges that the district court erred in finding that the amended petition and second amended petition failed to state a cause of action against Metz individually and as corporate director, agent, and employee of DTS.

Metz contends that this court lacks jurisdiction to decide the appeal because Carlson did not file a notice of appeal until 5 months after the district court's order sustaining the demurrer. However, the district court did not dismiss the case when the court sustained the demurrer on March 8, 1993. Rather, the district court signed an order dismissing the case on July 12. Carlson then timely filed this appeal on August 11. The two procedures of demurrer and dismissal are distinct. If a demurrer is sustained, the case still pends until dismissed. *Anderson v. Matthis*, 246 Neb. 215, 518 N.W.2d 94 (1994). Metz' argument that this court lacks jurisdiction is meritless.

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994); *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994).

In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure

to state a cause of action is to be overruled. *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994); *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993). A statement of "facts sufficient to constitute a cause of action," as used in Neb. Rev. Stat. § 25-806(6) (Reissue 1989), means a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Merrick, supra.* See, *Lawyers Title Ins. Corp., supra*; *Wheeler, supra.*

We thus turn to Carlson's amended petition to ascertain whether he pleaded facts sufficient to state a cause of action against Metz personally. In summary, Carlson alleges that Metz had a duty and responsibility to adequately supervise and train Tague because (1) Metz is the director, secretary, and employee of DTS, the corporation which hired Tague; (2) Metz is "Director of Operations and Technical Services" for DTS, and in this capacity Metz hired and supervised all employees, including Tague; and (3) Metz personally hired Tague as a mechanic and then gave inadequate instructions to Tague on the operation of a trencher.

Carlson alleges that Metz was negligent (1) because Tague, while under Metz' supervision, negligently caused the trencher to engage Reynolds' clothing, thereby pulling Reynolds into the trencher and causing his death; (2) because Metz failed to ensure that Tague was certified to operate a trencher as required by Omaha ordinance and by Occupational Safety and Health Administration regulations; (3) because Metz permitted and directed Tague to operate the trencher, knowing that Tague was not qualified to operate the trencher; (4) because Metz failed to supervise and train Tague properly and failed to warn Reynolds of danger; and (5) because Metz failed to adequately train and supervise Tague and was thus the direct and proximate cause of Reynolds' death.

The district court found that Carlson failed to plead facts to support a claim that Metz was an agent acting on behalf of an undisclosed principal and failed to plead facts sufficient to show Metz' personal liability as an employee or officer of DTS. We shall examine only the latter part of the court's order as it is dispositive of the case.

In *Dieter v. Hand*, 214 Neb. 257, 333 N.W.2d 772 (1983), we held an employee of a corporation whose negligence causes injury is jointly and severally liable, with the corporation, for damages stemming from the injuries. In that case, Dieter brought a negligence action against employees of a public power district for injuries sustained by him when his truck came in contact with a sagging powerline which the defendant employees were required to maintain. *Dieter, supra.* The district court sustained the employees' demurrer, finding that Dieter failed to plead facts sufficient to state a cause of action against the employees. We reversed, and remanded. We noted that courts do not generally impose liability upon an employee when the employee was not in charge of or did not actually do the work that caused the injury. We also stated that

> " '[i]t is not the agent's contract with his principal which exposes him to or protects him from liability to third persons, but his common–law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable.' "

*Id.* at 260, 333 N.W.2d at 774, quoting *Fonda v. Northwestern Public Service Co.*, 134 Neb. 430, 278 N.W. 836 (1938).

We adhere to the rule that an agent or employee cannot shield himself from liability solely by virtue of the fact that he is in another's employ. In employee negligence situations, the question is whether the employee owed the plaintiff a duty of reasonable care not to injure him or whether the employee owed a duty to only his employer. *Dieter, supra.* That determination is a question of law and depends upon the circumstances of the particular case. *Id.* We stated in *Dieter* that "[b]efore the employee can be held liable there must be some reason why he should be called upon to act and thus use proper care to prevent injury to the third person . . . ." *Id.* at 262, 333 N.W.2d at 775.

We detailed in *Dieter* the four criteria for imposing personal liability on an employee or corporate officer. First, the principal or employer must owe a duty of care to a third party, breach of

which caused the resulting damage. Second, that duty is delegated by the principal or employer to the defendant officer, agent, or employee. Third, the defendant officer, agent, or employee must personally fail to use the degree of care required by ordinary prudence under the same or similar circumstances, thereby resulting in a breach of the duty owed to the third party. This criterion includes the failure to act upon the actual knowledge that others are at risk and the lack of ordinary care in discovering and avoiding risk which results from the breach of the duty. Fourth, with regard to personal fault, it is not sufficient that the defendant merely had a general administrative responsibility for the work being done, nor is it sufficient that the defendant delegated that general responsibility with due care to a responsible subordinate, unless the defendant personally knows or should have known that the subordinate failed to perform or performed negligently and the defendant nevertheless did not cure the risk of harm. The defendant officer, agent, or employee must owe a personal duty to the injured third party, breach of which specifically caused the plaintiff's damages. *Dieter, supra.*

The Restatement (Second) of Agency §§ 351 and 358(1) (1958) are also instructive on the issue of whether agents are liable to third parties when the agent directs or permits the negligent conduct of others. "An agent who directs or permits conduct of another under such circumstances that he should realize that there is an unreasonable risk of physical harm to others or to their belongings is subject to liability for harm resulting from a risk which his direction or permission creates." *Id.*, § 351 at 121. "The agent of a disclosed or partially disclosed principal is not subject to liability for the conduct of other agents unless he is at fault in appointing, supervising, or cooperating with them." *Id.*, § 358(1) at 132.

Carlson alleges in his amended petition (1) that DTS owed a duty of care to Reynolds because DTS and Metz hired Tague and directed him to work with the trenching machine in the same trench as Reynolds and that DTS breached that duty by negligently training and supervising Tague; (2) that DTS delegated the hiring, training, and supervising of Tague to Metz, since Metz was the director of operations and technical

services; (3) that Metz breached the duty of care owed to Reynolds because Metz failed to ensure that Tague was properly certified to operate a trencher, failed to properly train Tague, failed to supervise Tague after directing Tague to trench, and failed to warn Reynolds that Tague was inexperienced and uncertified; and (4) that Metz breached his duty of care when he directed Tague to trench the area near where Reynolds was located when Metz knew or should have known that Tague would perform the job negligently, thereby resulting in Reynolds' injury and subsequent death.

In light of the criteria set forth in *Dieter*, Carlson pleaded facts in the amended petition sufficient to state a cause of action for negligence against Metz personally. The district court erred in sustaining Metz' demurrer, and thus the judgment is reversed and the cause remanded.

Since we find that Carlson's amended petition states a cause of action against Metz, we need not reach the issue of whether Carlson's second amended petition was timely or if it adequately changed the amended petition to state a cause of action.

REVERSED AND REMANDED.

LANPHIER, J., not participating.